IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ANDREW RELIFORD,

              Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 16-457 (JBS)

**OPINION**

APPEARANCES:

Sheryl Gandel Mazur, Esq.
195 Fairfield Avenue
Suite 2C
West Caldwell, NJ 07006
    Attorney for Plaintiff Andrew Reliford

Matthew Jared Littman, Esq.
Special Assistant U.S. Attorney
Social Security Administration
Office of the General Counsel
300 Spring Garden Street
Philadelphia, PA 19147
    Attorney for Defendant Commissioner of Social Security

**SIMANDLE**, District Judge:

## I. INTRODUCTION

    This matter comes before the Court pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff Andrew Reliford's application for disability benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, et seq. Plaintiff,

who suffers from asthma, status post gunshot wounds with residual pain, depression, and a history of alcohol abuse in remission, was denied benefits for the period beginning November 14, 2011, the alleged onset date of disability, to October 27, 2014, the date on which the Administrative Law Judge ("ALJ") issued a written decision.

In the pending appeal, Plaintiff argues that the ALJ's decision must be reversed and remanded on three grounds. Plaintiff contends that the ALJ erred in (1) failing to consider all of Plaintiff's severe and non-severe impairments; (2) discrediting Plaintiff's subjective complaints, including pain; and (3) omitting some of Plaintiff's additional documented limitations in determining Plaintiff's residual functioning capacity ("RFC"). For the reasons discussed below, the Court will affirm the ALJ's decision denying Plaintiff disability benefits.

## II. BACKGROUND

### A. Procedural History

Plaintiff Andrew Reliford filed an application for disability insurance benefits on November 14, 2011, alleging an onset of disability as of that date. (R. at 22.) On March 1, 2012, the Social Security Administration ("SSA") denied the claim, and upon reconsideration on January 10, 2013. (Id.) Hearings were held on February 14, 2014 before ALJ Leslie Rogall

and on September 10, 2014 before ALJ Dennis O'Leary, at which Plaintiff appeared with counsel and testified and at which a vocational expert also testified. (Id.) On October 27, 2014, ALJ O'Leary denied Plaintiff's appeal at step five of the sequential analysis, finding that Plaintiff could perform work as a table worker, order clerk, or ampoule sealer. (R. at 30.) The Appeals Council denied Plaintiff's request for a review and Plaintiff timely filed the instant action. (R. at 1-7.) Subsequent to the ALJ's decision, Plaintiff was awarded disability benefits upon a new application, based on a different injury, filed on December 30, 2015. (Plaintiff's Brief at 4-5.)

**B. Medical History[1]**

The following are facts relevant to the present motion. Plaintiff was 45 years old as of the date of the ALJ Decision and had completed the eleventh grade and did not hold a GED.

---

[1] Plaintiff has provided new medical records documenting "the ongoing severity of his asthma condition" into 2015, after the ALJ rendered his decision finding Plaintiff not disabled. An appeal for judicial review from the District Court is not the proper way for Plaintiff to introduce new evidence of his disability that post-dates the ALJ's decision. The District Court reviews the Commissioner's final determination with regards to the evidence provided to the SSA during the administrative appeals process, and will only overturn the Commissioner's findings if they are not supported by "substantial evidence" already in the medical record. 42 U.S.C. § 405(g).

Plaintiff had work experience as a hand packager, janitor, fast food worker, and recycler. (R. at 79-80.)[2]

## 1. Asthma

Plaintiff testified before the ALJ that he has been diagnosed with COPD and asthma, and that he has shortness of breath going up and down stairs or walking a block. (R. at 59-60.) When he has an attack, which Plaintiff alleges happens "maybe about four or five times out of the month," he uses a nebulizer, emergency inhaler, or goes to the emergency room. (R. at 60-62.) He alleges that he takes Prednisone, Advair, and Singulair. (R. at 61.)

In October and November of 2011, Plaintiff visited the ER or was hospitalized at Newark Beth Israel Medical Center for asthma or upper-respiratory problems six times. (R. at 476-551.) He was discharged with medication. (R. at 502, 551.) It appears that Plaintiff reported to Dr. Patel three times for bronchial asthma in 2012 (R. at 576-88, 761), and that he reported to Dr. Gupta of Jersey Rehab that his asthma was "resolved" as of November 15, 2012. (R. at 626.) At some point, Dr. Patel completed a pulmonary RFC questionnaire in which he diagnosed

---

[2] Plaintiff testified at the February 14, 2014 that he had worked "[a]bout seven months ago" taking orders at a produce store, but that he had to stop because the temperature changes and exhaust from the trucks aggravated his asthma and because the lifting hurt his back. (R. at 49-50.)

Plaintiff with COPD and asthma but did not identify any clinical findings, laboratory work, or function tests that supported his finding of impairments, and did not note how often Plaintiff has attacks and how long they last, or describe the nature, frequency and length of contact of their relationship. (R. at 589.) He opined that Plaintiff's symptoms were severe enough to "constantly" interfere with his attention and concentration and that Plaintiff's asthma would be a "severe limitation" on his ability to deal with work stress. (R. at 590.)

Plaintiff sought treatment for asthma a number of times in the second half of 2013. Plaintiff was admitted to the ER on August 5, 2013 with a "wheezing lung sound" and "unable to speak in full sentence[s]," and his chart notes that "the course/duration of symptoms is worsening" although this was his first "asthma exacerbation in over a year." (R. at 635-638.) Plaintiff's respiratory exam showed regular respiration with moderate expiratory wheezes. (R. at 639.) He was treated with a nebulizer and discharged in stable condition with "no limited activity [and] no limited work." (R. at 640.) Plaintiff returned to the ER on August 20, 2013 and was admitted to the intensive care unit directly. (R. at 666.) Plaintiff admitted to not following his home medication instructions, but his shortness of breath subsided after one day of treatment and he was discharged without chest pain or difficult breathing. (R. at 666-67.)

Imaging of Plaintiff's chest showed "no radiographic evidence of acute pulmonary disease." (R. at 667.)

Plaintiff followed up with Dr. Pathak on September 10, 2013, reporting that he felt some "longing of oxygen" but that he had not be taking all his medications regularly since he was last discharged from the hospital. (R. at 698.) Dr. Pathak's exam showed no shortness of breath or wheezing, lungs clear to auscultation with non-labored respirations and equal breath sounds, and no chest wall tenderness. (R. at 698-700.) Dr. Pathak instructed Plaintiff to take all his medications regularly and report back with discomfort. (R. at 700.) On September 13, 2013, Plaintiff followed up with another pulmonologist, Dr. Mehta, reporting that his breathing was better overall but that he still had some shortness of breath at night and poor sleep. (R. at 654.) The exam showed a "chest wall free of abnormalities," normal breathing pattern and effort, normal breath sounds, and no wheezing or rhonchi. (R. at 655.) On November 8, 2013, Plaintiff again saw Dr. Mehta, complaining of "shortness of breath . . . exertional dyspnea, excessive daytime sleepiness, fragmented sleep, [and] frequent arousals" but noting that he had "no ER admissions [and] no frequent attacks" since his last visit. (R. at 652.) Dr. Mehta's exam again showed "chest wall free of abnormalities," normal breathing pattern and effort, normal breath sounds, and no

wheezing or rhonchi. (R. at 653.) Finally, Plaintiff visited Dr. Pathak again on December 17, 2013, complaining of shortness of breath on exertion but again admitting that he wasn't regularly taking his medications. (R. at 752.) Dr. Pathak's respiratory exam noted "Lungs are clear to auscultation, Respirations are non-labored, Breath sounds are equal, No chest wall tenderness." (R. at 753.)

Nine months later, on September 17, 2014, Plaintiff returned to Newark Beth Israel Medical Center with difficulty breathing after exposure to smoke at a friend's barbeque. (R. at 842.) He reported having needed nebulizer treatments from other hospital emergency departments two other times in the days prior and getting "admitted in the hospital for asthma exacerbations 2-3 times each year." (Id.) Plaintiff responded well to treatment and was discharged in stable condition. (Id.) Imaging taken during that hospital stay indicated clear lungs and no evidence of pulmonary emboli. (R. at 843.) The respiratory exam showed non-labored breathing and equal breath sounds. (R. at 844.)

### 2. Back, Neck, and Extremities

Plaintiff testified before the ALJ that he has pain in his back, neck, and groin area related to his gunshot wounds. (R. at 62.) Plaintiff also testified that he has pain and numbness in his legs from "blood clots" but that his doctors have decided

not to prescribe blood thinners until his clots "move" or "grow bigger." (R. at 63.) He takes Vicodin and Percocet to manage his pain. (R. at 64.)

On February 12, 2012, Plaintiff sought treatment for substance abuse at Integrity, Inc. (R. at 557–575.) At his intake, Plaintiff reported no neurological or musculoskeletal problems, including numbness, weakness, extremity pain, or back pain. (R. at 567.)

Plaintiff received treatment from Dr. David, a physiatrist, between August and November of 2012. (R. at 593–620.) Dr. David noted that Plaintiff "ambulates with a nonatalgic gait" and observed lumbago and cervicalgia and recommended that Plaintiff begin a course of physical therapy for those conditions and for lumbar and neck sprain. (R. at 615.) Plaintiff received physical therapy for pain in his neck and low back at Advanced Rehabilitation and Wellness Center from August through October of 2012. (R. at 593–612.) At his initial physical therapy exam, Plaintiff rated his pain an 8 out of 10 and reported "dull aching pain on his upper and lower back region that sometimes throbs." (R. at 609.) Plaintiff reported that he was "independent with his functional skills and [activities of daily living] but with difficulty." (Id.) His therapist noted decreased range of motion in the cervical and lumbar spine and bilateral tenderness to palpitation in the trapezius muscles.

(R. at 609-612.) Therapists rated his "rehab potential" as "good" throughout the records of his visits. (Id.) Imaging of his spine taken on October 5, 2012 at Barnabas Health Imaging Center showed "[n]o evidence of herniation, spinal stenosis, foraminal narrowing or abnormal signal within the cord" in the lumbar spine and "[m]ultilevel degenerative changes, disc disease with canal and foraminal narrowing most marked at C5-C6 where there is effacement of the cord" in the cervical spine. (R. at 616-20.)

Plaintiff was evaluated by Dr. Gupta of Jersey Rehab on November 15, 2012 for complaints of neck pain radiating to his hands and low back pain. (R. at 625.) Plaintiff reported that he had trouble turning his neck from left to right, experienced numbness and tingling in his hands, that his symptoms "worsen with daily activities of lifting, pushing, and pulling," and that he found no relief from his symptoms from physical therapy. (Id.) He also reported throbbing, sharp pain in his low back radiating down his right leg to the ankle. (Id.) Dr. Gupta noted a normal gait but diminished range of motion in the cervical and lumbar spine with some tenderness, pain, numbness, and tingling. (R. at 625-26.) Dr. Gupta diagnosed Plaintiff with low back pain without sciatica and cervical radiculopathy. (R. at 627.) He prescribed Vicodin and diclofenac sodium and recommended that

Plaintiff continue with physical therapy and have cervical surgery. (Id.)

In August of 2013, Plaintiff received treatment for deep vein thrombosis while he was hospitalized for complications with his asthma. (R. at 670-71.) Plaintiff's discharge summary notes that he was ambulatory and that because "this was below knee DVT and repeat dopplers did not show any proximal extension, no anticoagulation was initiated." (R. at 671, see also at 667.)

As part of his exams in September and December of 2013, Dr. Pathak noted normal range of motion, strength, and gait, with no tenderness or swelling. (R. at 700, 753.) Plaintiff reported to Dr. Pathak that he had "mild" non-radiating pain "in the middle of the back" but was not experiencing pain that day. (R. at 699.)

### 3. Mental Impairments

Plaintiff testified before the ALJ that he began seeing a doctor at Palisades Behavioral Health Care because he had "a change in [his] attitude" after he was shot. (R. at 64.) He testified that he was "not being able to sleep; anxiety; hypo – just hypo at times; always on alert; always thinking someone's after me; nightmares, constantly . . . ." (Id.) He said that his doctor diagnosed him with post-traumatic stress disorder, anxiety, and hypertension and prescribed Wellbutrin and Prozac, although he hadn't taken the Prozac. (R. at 65.)

On February 12, 2012, Plaintiff sought treatment for substance abuse at Integrity, Inc. (R. at 557–575.) At his intake, Plaintiff denied experiencing anxiety, depression, nightmares, or flashbacks. (R. at 564–65.) Plaintiff apparently attended an outpatient counseling program at Bethel Counseling Services in August of 2013 (R. at 681) and the GenPsych program for anxiety and substance abuse starting in September of 2013. (R. at 805–813.) In February of 2014, Dr. Kurani of Palisades Behavioral Care diagnosed Plaintiff with "major depression, post traumatic stress disorder" and prescribed Wellbutrin for depression and Prozac for Plaintiff's nightmares associated with PTSD. (R. at 672–73.)

### 4. State Agency Consultants

Two state agency medical consultants examined Plaintiff on February 27, 2012 and upon reconsideration on January 9, 2013. (R. at 87–111.) Both doctors concluded that Plaintiff could occasionally lift/carry 20 pounds and frequently lift/carry ten pounds; could stand/walk about six hours and sit about six hours in an 8-hour workday; and that Plaintiff had postural limitations. (R. at 95, 108–09.)

### C. ALJ Decision

In a written decision dated October 27, 2014, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of the decision

because, consistent with his age, education, work experience, and RFC, he was capable of working as a table worker, order clerk, or ampoule sealer. (R. at 30.)

At the first stage of the five-step sequential evaluation process, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since November 14, 2011, the alleged onset date of disability. (R. at 24.)

At step two, the ALJ determined that Plaintiff suffered from the following "severe impairments: status post gunshot wounds with residual pain; asthma; depression; and a history of alcohol abuse currently in remission." (R. at 24.) The ALJ found that Plaintiff's deep vein thrombosis was not severe because "there is no evidence which shows that his impairment results in debilitating limitations." (Id.) Despite recognizing Plaintiff's physical and mental impairments as severe, at step three, the ALJ concluded that Plaintiff's impairments did not meet, or equal in severity, any impairment found in the Listing of Impairments set forth in 20 C.F.R. Part 404. (R. at 26.)

At step four, the ALJ determined that Plaintiff possessed the residual functioning capacity to perform sedentary work, except that:

> He is limited to only occasional push or pull and
> occasional foot control operation. He is limited to
> frequent fingering and feeling, and should avoid
> exposure to irritants such as fumes, odors, dusts, and
> gases. He is limited to performing simple, routine and

repetitive tasks. He should be able to sit or stand
alternatively at will provided that he is not off task
for more than 5% of the work period outside of regularly
scheduled breaks.

(R. at 26.) Although the ALJ found that Plaintiff's physical and

mental impairments caused the alleged symptoms, he found

Plaintiff's statements concerning the intensity, persistence, or

limiting effects of those symptoms not credible because they

were inconsistent with his testimony about his daily activities

and with the medical evidence in his file. (R. at 27, 29.)

Plaintiff testified at his hearing that he will sit, walk, and

stretch on a typical day; do "little things" like take out the

garbage, fold clothes, make his bed, and prepare meals; that he

can dress himself without difficulty and sometimes drive; that

he goes to the movies a few times a month and plays Scrabble;

that he can sit for 45 minutes, stand for an hour, lift a gallon

of milk, and pay attention to tasks for about two hours. (R. at

66-69.)

In support of these findings, the ALJ evaluated Plaintiff's

testimony; the observations and opinions of treating physicians;

Plaintiff's treatment notes, record of care, and his use of

medication; the intensity, persistence, and limiting effects of

symptoms associated with his medical conditions; and testimony

from a vocational expert. (R. at 26-30.) Specifically, with

respect to Plaintiff's asthma, the ALJ concluded that

Plaintiff's treatment notes in the record do not sustain his allegations of a disabling impairment because Plaintiff failed to comply with his prescribed treatment at times and there have been "periods of over a year in which he has not required visits to the emergency room for shortness of breath." (R. at 29.) With respect to the effects of Plaintiff's gunshot wounds and his allegations of pain, the ALJ noted that imaging of Plaintiff's spine from October 2012 indicated multilevel degenerative changes and narrowing at C5-6 and that Plaintiff was recommended surgery, engaged in a course of physical therapy, and received medication for residual pain, but that DDS consultants, whose assessments the ALJ gave "great weight," recommended that Plaintiff could "perform a range of light work with postural restrictions." (R. at 29.) With respect to Plaintiff's psychological condition, the ALJ found that Plaintiff's "depression allegations ha[d] no real clinical findings," based his review of records from Plaintiff's treatment at Integrity House for substance Abuse and Palisade Behavioral Care and the DDS consultants' finding that any alleged psychological impairment did not preclude all work activity. (R. at 28.) The ALJ also noted that the Plaintiff conceded that he has not filled some of his prescriptions and that he only sought psychiatric care right before the hearing. (R. at 27.)

Ultimately, the ALJ determined that, although Plaintiff is unable to perform any past relevant work, there are jobs that exist in significant numbers in the national economy that he can perform. (R. at 29-30.)

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Court's review is deferential to the Commissioner's decision, and the Court must uphold the Commissioner's factual findings where they are supported by "substantial evidence." 42 U.S.C. § 405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Cunningham v. Comm'r of Soc. Sec., 507 F. App'x 111, 114 (3d Cir. 2012). Substantial evidence is defined as "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 400 (1971); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (using the same language as Richardson). Therefore, if the ALJ's findings of fact are supported by substantial evidence, the reviewing court is bound by those findings, whether or not it would have made the same determination. Fargnoli, 247 F.3d at 38. The Court may not weigh the evidence or substitute its own conclusions for those of the ALJ. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). Remand is not required where it would not affect the

outcome of the case. <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 553 (3d Cir. 2005).

## IV. DISCUSSION

### A. Legal standard for determination of disability

In order to establish a disability for the purpose of disability insurance benefits, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." <u>Plummer v. Apfel</u>, 186 F.3d 422, 426 (3d Cir. 1999); 42 U.S.C. § 423(d)(1). A claimant lacks the ability to engage in any substantial activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." <u>Plummer</u>, 186 F.3d at 427–428; 42 U.S.C. § 423(d)(2)(A).

The Commissioner reviews claims of disability in accordance with the sequential five-step process set forth in 20 C.F.R. § 404.1520. In step one, the Commissioner determines whether the claimant currently engages in "substantial gainful activity." 20 C.F.R. § 1520(b). Present engagement in substantial activity precludes an award of disability benefits. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987). In step two, the claimant must

16

demonstrate that the claimant suffers from a "severe impairment." 20 C.F.R. § 1520(c). Impairments lacking sufficient severity render the claimant ineligible for disability benefits. See Plummer, 186 F.3d at 428. Step three requires the Commissioner to compare medical evidence of the claimant's impairment to the list of impairments presumptively severe enough to preclude any gainful activity. 20 C.F.R. § 1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Plummer, 186 F.3d at 428. Step four requires the ALJ to consider whether the claimant retains the ability to perform past relevant work. 20 C.F.R. § 1520(e). If the claimant's impairments render the claimant unable to return to the claimant's prior occupation, the ALJ will consider whether the claimant possesses the capability to perform other work existing in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 1520(g); 20 C.F.R. 404.1560(c).

**B. Substantial evidence supports the ALJ's findings regarding Plaintiff's credibly established limitations**

Plaintiff asserts first that the ALJ erred at steps two, three, and five of the sequential analysis by not fully considering Plaintiff's severe and non-severe impairments, including his asthma, status-post nerve damage in his back and

legs, and mental impairments. The Court will address each category of Plaintiff's impairments in turn.

With respect to Plaintiff's respiratory issues, the ALJ found at step two of the sequential analysis that Plaintiff's asthma is a "severe impairment" because it is a "medically determinably impairment[] that . . . significantly limits the claimant's mental and physical abilities to do one or more basic work activities," but determined at step three that Plaintiff's condition does not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Supbart P, Appendix 1, Section 3.00. (R. at 24.) Plaintiff takes the position that the ALJ erred by finding that his asthma does not meet or equal Listing 3.03, Asthma, because he did not "fully and fairly review[] Mr. Reliford's medical evidence and testimony." (Pl. Br. at 16.)

To the contrary, the ALJ properly considered Plaintiff's medical evidence of respiratory issues and found that they did not meet or equal Listing 3.03. The SSA Regulations define an asthma attack as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room, or equivalent setting." 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 3.00C. Asthma attacks are considered

disabling where "in spite of prescribed treatment and requiring physician intervention, [they] occur[] at least once every 2 months or at least six times a year." Id., Section 3.03B. A review of Plaintiff's hospitalization records – not his subjective recounting of his asthma incidents, as will be discussed further, below – reveals that substantial evidence supports the ALJ's observation that the Plaintiff "is noted to have periods of over a year in which he has not required visits to the emergency room for shortness of breath" and that "[h]e is also noted to be noncompliant with his prescribed treatment at times." (R. at 29.) While Plaintiff was apparently hospitalized six times in 2011, there are no records of attacks in 2012 and only two in August of 2013, the second of which may have been caused or exacerbated because Plaintiff admitted to not following the directions on his medications; it appears that each time, Plaintiff's symptoms improved quickly after hospital treatments and resuming his medications as prescribed. Plaintiff attended appointments with two pulmonologists, Dr. Pathak and Dr. Mehta, a number of times in the fall of 2013, but treatment notes from both doctors reveal clear lungs, normal breathing patterns, and further admissions from Plaintiff that he was not taking his medications regularly. Accordingly, the ALJ's conclusion at step three that Plaintiff's respiratory symptoms

did not meet or equal Section 3.03, Asthma, is supported by substantial evidence.

Likewise, the ALJ's decision at step five to afford little weight to Dr. Patel's opinion that Plaintiff was unable to work because of his respiratory impairments was supported by substantial evidence. Dr. Patel concluded, on his pulmonary RFC questionnaire, that Plaintiff's respiratory impairments would severely limit his ability deal with work stress and would constantly interfere with his attention and concentration, but Dr. Patel's conclusions were not supported or explained on the questionnaire and are inconsistent with other records from Drs. Pathak and Mehta. Under such circumstances, Dr. Patel's opinion was not entitled to controlling weight. <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 43 (3d Cir. 2001). The ALJ's final formulation of Plaintiff's RFC – limiting Plaintiff to sedentary work and avoiding "exposure to irritants such as fumes, odors, dusts, and gases" – accounted for Plaintiff's respiratory symptoms and other complaints to the doctors who documented their contact with Plaintiff more extensively.

Next, Plaintiff asserts that the ALJ erred at step five in determining that Plaintiff's status-post nerve damage in his back and legs from his gunshot wounds would not prevent him from occasional pushing and pulling and frequent fingering and

feeling, and would not keep him off task for more than 5% of his time working.

To the contrary, substantial evidence in the record supports the ALJ's finding that Plaintiff can still work. Despite Plaintiff's subjective complaints, to be discussed further below, imaging of Plaintiff's spine showed only "mild to moderate" degenerative disc disease in the cervical spine but otherwise minimal or no evidence of spinal abnormalities; physical exams often showed that Plaintiff had normal gait, normal strength, and full range of motion; Plaintiff's potential for rehabilitation was rated "good" before he decided to stop physical therapy; and Plaintiff does not use a walker, wheelchair, cane, crutches, or braces. Plaintiff reported to his physical therapists that he could independently perform functional skills and activity of daily living "with difficulty," consistent with his December 2011 report that he dresses, bathes, and prepares meals himself and that he goes outside and uses public transportation daily, and his testimony before the ALJ that he walks, stretches, and does light household chores on a daily basis, and that he can sit for 45 minutes and stand for one hour at a time. Both state agency consultants opined that Plaintiff could in fact perform a range of light work. Accordingly, there is substantial evidence supporting the ALJ's finding that Plaintiff could perform

sedentary work with some limitations on his pushing, pulling, foot control operation, fingering, and feeling, and requiring Plaintiff to be able to sit or stand alternately at will.

Of course, there is evidence in the record from which the ALJ could have found Plaintiff more limited by his back and extremity issues – for example, Dr. David noted tenderness and weakness in Plaintiff's neck, prescribed physical therapy and medication for residual pain, and recommended surgery, and Plaintiff's physical therapists noted decreased range of motion in Plaintiff's neck, spine, and legs. But where, as here, there is substantial evidence supporting the ALJ's conclusion, the district court may not reweigh the evidence "or substitute [our own] conclusions for those of the fact-finder." Rutherford, 399 F.3d at 522.

Finally, Plaintiff contends that the ALJ did not adequately evaluate his mental impairments, including depression and post-traumatic stress disorder, in accordance with 20 C.F.R. § 416.920a. However, the ALJ's written decision outlines his findings in accordance with the Regulations' "special technique" for evaluating mental impairments: as required, the ALJ considered Plaintiff's symptoms, signs, and laboratory findings and whether they show a determinable mental impairment; rated Plaintiff's degree of functional limitation with respect to understanding, remembering, or applying information, interacting

with others, concentration, persistence, and maintaining pace, and adapting and managing himself; evaluated whether the limitation was "none," "mild," or "severe" and whether it meets or equals in severity a listed mental disorder; and assessed Plaintiff's residual functional capacity. See § 416.920a(b), (c), (d), & (e).

Moreover, substantial evidence supports the ALJ's finding that Plaintiff suffers from depression but that he has only mild daily living activity restrictions, mild social functioning difficulties, moderate concentration, persistence or pace difficulties, and no extended duration decompensation episodes, and his determination that Plaintiff can still perform "simple, routine and repetitive tasks." Even after both gunshot wounds, Plaintiff reported that he experienced no emotional problems when he sought substance abuse treatment, and his physical exams with other doctors reported no anxiety or depression under psychiatric symptoms. Later, Plaintiff was prescribed Prozac and Wellbutrin for depression and nightmares, but he filled only one of his prescriptions and appears to have cancelled follow-up appointments because he "fel[t] fine." (R. at 854.) Plaintiff's records show that he attended a few outpatient counseling programs but that he only began seeking psychiatric care shortly before the ALJ hearing. He also reported daily activities and no problems concentrating for two hours at a time or following

written and spoken directions. Neither state agency consultant found evidence of any psychological impairment that resulted in limitations. Indeed, the ALJ noted that he was giving Plaintiff the "benefit of the doubt" in limiting him to simple repetitive work, and that his alleged problems with concentration and focus might be the side effect of his pain medications.

To the extent that Plaintiff asserts that the ALJ was required to order additional consultative evaluation or recontact treating sources in accordance with 20 C.F.R. § 416.920b (Pl. Br. at 18), Plaintiff is incorrect that the ALJ "was under a duty" to further develop the record through any particular method, and he has not shown that the evidence in his case record is "insufficient or inconsistent" such that the record needs further development. Section 416.920b(b)(2) describes the actions the SSA "may" take if it cannot make a determination or decision about disability based on the evidence in a claimant's case record. Crucially, the regulations do not require the SSA to take any particular action, or even to take action at all where there is inconsistent evidence but the agency finds it can make a determination despite the conflicting evidence it has. The absence of any consultative evaluations in Plaintiff's voluminous record do not mandate reversal and remand.

For these reasons, the ALJ's findings about Plaintiff's limitations are supported by substantial evidence in the record and need not be reversed and remanded.

### C. Substantial evidence supports the ALJ's credibility findings

Next, Plaintiff argues that the ALJ erred in failing to fully or fairly evaluate Plaintiff's subjective complaints of his respiratory issues, back and leg pain, and mental impairments, and to provide a rationale for discounting Plaintiff's credibility. In particular, Plaintiff asserts that the ALJ ignored his allegations of shoulder, arm, and hand pain, weakness and shaking, pain on sitting, limited concentration, swelling in his ankles and legs from deep vein thrombosis, nightmares, and flashbacks.

Assessments of a claimant's account of his symptoms, including pain, must proceed as follows. First, a claimant must show that a medically determinable impairment exists which may cause symptoms like "pain, fatigue, shortness of breath, weakness, or nervousness." 20 C.F.R. § 416.929(b). Then, the ALJ must "evaluate[] the intensity and persistence of [the] symptoms, such as pain, and determin[e] the extent to which [the] symptoms limit" the claimant's capacity for work. § 416.929(c). To do so, the ALJ considers objective medical evidence, the claimant's statements about his symptoms, other

evidence submitted by medical sources, and observations by state agency employees about the claimant's daily activities, what precipitates or aggravates symptoms, and medications and other treatments. Id. at (c)(3). The ALJ must evaluate all relevant evidence, give subjective complains "serious consideration," and explain the reason for rejecting any particular piece of testimony. Burns v. Barnhart, 312 F.2d 113, 129 (3d Cir. 2002). "Although the ALJ is required to consider the Plaintiff's subjective complaints of pain, the ALJ may reject these complaints when they are inconsistent with objective medical evidence in the record." Morel v. Colvin, Civil No. 14-2934, 2016 WL 1270758, at *4 (D.N.J. Apr. 1, 2016) (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)). "The substantial evidence standard entitles an ALJ to considerable deference, especially in credibility findings." Volage v. Astrue, Civil No. 11-4413, 2012 WL 4742373, at *7 (D.N.J. Oct. 1, 2012) (citing Smith v. Califano, 637 F.2d 968, 969 (3d Cir. 1981)).

In this case, the ALJ adequately set forth his rationale for discounting Plaintiff's subjective allegations of pain and other symptoms. At step five, the ALJ concluded that "[t]he credibility of claimant's allegations is also weakened by inconsistencies between his allegations and the medical evidence" and that "there were inconsistencies in the claimant's testimony." (R. at 29.) After noting that there were large gaps

in Plaintiff's treatment, particularly for his respiratory impairments, and that Plaintiff failed to follow directions with his medications for asthma and depression, the ALJ found that Plaintiff's testimony about his daily living activities and functional abilities was inconsistent with his allegations of disabling asthma, back pain, and mental conditions, and also inconsistent with objective medical evidence that Plaintiff's conditions could be managed with appropriate treatment. While the ability to carry out certain daily activities will not disprove that a claimant is disabled, Smith, 637 F.2d at 971–72, the ALJ did not base his credibility finding on those activities alone. Rather, the ALJ explained his reason for rejecting the non-medical testimony: it was inconsistent with objective medical evidence, other non-medical testimony, and records of Plaintiff's abilities. Accordingly, there is substantial evidence to support the ALJ's credibility findings, and we need not reverse and remand for further consideration of Plaintiff's subjective complaints.

### D. Substantial evidence supports the ALJ's RFC finding

Finally, Plaintiff takes the position that the ALJ erred in finding that he had the RFC to return to sedentary work with, inter alia, occasional pushing and pulling, occasional use of foot control operations, frequent fingering and feeling, and sitting or standing at will provided that Plaintiff is only off

task for 5% of the work period outside of scheduled breaks.

Plaintiff asserts that the ALJ failed to discuss other

documented limitations, including alleged:

- Need for 2-3 days per month absences for asthma attacks, COPD or other respiratory impairments;
- Need for unscheduled breaks of at least 1-2 hours, at least 3 times a week due to asthma attacks, pain on sitting, side effects of medication and pain;
- Only occasional reaching, handling and fingering due to injuries from gunshot wounds to the back and neck and hand shaking from asthma steroid medications;
- Need to alternate sitting and standing causing the Plaintiff to be off task 1/3 of the day or two hours per day;
- Need to elevate legs or lay down at unpredictable times due to DVT with swelling and clots in legs.

(Pl. Br. at 24.) According to Plaintiff, if the ALJ had

considered all of his limitations, the ALJ would have had to

conclude that he is disabled and cannot return to work.

Because this Court has already determined that substantial

evidence supports the ALJ's determinations about Plaintiff's

credibility and his credibly-established limitations, the

undersigned disagrees that there are other limitations that the

ALJ ought to have incorporated into the RFC at step five. The

ALJ's formulation of the RFC accounts for (and with respect to

Plaintiff's mental impairments, exceeds) the limitations that

the ALJ found were caused by Plaintiff's asthma, back and

extremity pain, and depression. These additional limitations

were presented through sources in the record – Dr. Patel's

28

pulmonary RFC questionnaire and Plaintiff's subjective testimony
- that the ALJ was entitled to disregard or give little weight
to. The ALJ did not err in this respect.

## V. CONCLUSION

For all of these reasons, the Court finds that substantial
evidence supports the ALJ's decision to deny Plaintiff benefits,
and that it should be affirmed.  An accompanying Order will be
entered.


 **June 30, 2017**                    **s/ Jerome B. Simandle**
Date                                 JEROME B. SIMANDLE
                                     U.S. District Judge